# IN THE SUPREME COURT OF IOWA

No. 11–1784

Filed May 10, 2013

**TERRI RIVERA,**

Appellant,

vs.

**WOODWARD RESOURCE CENTER** and **STATE OF IOWA,**

Appellees.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Dallas County, Gregory A. Hulse, Judge.

Defendants seek further review of a decision by the court of appeals that reversed a decision by the district court dismissing plaintiff's tort claim for failing to comply with the statute of limitations. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED; CASE REMANDED.**

Jill M. Zwagerman and Bryan P. O'Neill of Newkirk Law Firm, P.L.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Jeffrey S. Thompson, Deputy Attorney General, Barbara E.B. Galloway, and Meghan L. Gavin, Assistant Attorneys General, for appellees.

**CADY, Chief Justice.**

In this appeal, we must decide if a plaintiff satisfied the statute of limitations under the Iowa Tort Claims Act (ITCA). Initially, the district court dismissed the plaintiff's first tort action against the State for failing to first exhaust administrative remedies under the Act. She subsequently filed a second action in district court within six months of the dismissal of the first action and more than two years from the time the action accrued but within six months of the dismissal of an administrative claim, which was filed under the Act within six months after the dismissal of the first tort action. The district court held that the plaintiff failed to comply with the statute of limitations and dismissed the second lawsuit. On appeal, we transferred the case to the court of appeals. The court of appeals reversed the decision of the district court. On further review, we vacate the decision of the court of appeals, reverse the judgment of the district court, and remand the case for further proceedings. We conclude the second lawsuit filed by plaintiff satisfied the savings clause of the statute of limitations under the Act.

## I. Background Facts and Proceedings.

Terry Rivera was employed at the Woodward Resource Center, a home for the disabled administered by the Iowa Department of Human Services. She was terminated from her employment on October 3, 2006, after she allegedly reported to her supervisor that another employee engaged in abusive conduct.

Rivera filed a wrongful discharge suit against the State in district court on September 26, 2008. She claimed she was discharged in violation of public policy. The State moved to dismiss the action for failing to exhaust administrative remedies as required by the ITCA. Rivera did not file an administrative claim against the State prior to filing

the lawsuit, believing she was not required to proceed under the ITCA because her claim was not based on personal injury. The district court granted the motion on November 10 and dismissed the case. It held the claim was a tort subject to the Act and that Rivera was required under the ITCA to pursue an administrative claim before filing her lawsuit in district court. *See* Iowa Code § 669.2(3)(*a*) (2007) (defining a "claim" under the Act); *id.* § 669.5 (identifying the administrative procedural requirements to be followed under the Act).

Rivera filed a claim with the state appeals board on November 25. On June 16, 2009, the board denied Rivera's claim.[1] On July 8, Rivera filed her lawsuit in district court a second time. In its answer, the State denied many of Rivera's allegations and interposed a number of affirmative defenses, including the statute of limitations and failure to exhaust administrative remedies.

The State subsequently moved for summary judgment. It claimed Rivera failed to file her lawsuit within two years from the time the action accrued pursuant to the two-year statute of limitations period under Iowa Code section 669.13. Rivera asserted her action was timely filed because the savings clause found in section 669.13(2) permitted her to file the lawsuit within six months of the denial by the state appeals board

---

[1]Prior to 2006, administrative claims under the ITCA were filed with and considered by the state appeals board. *See* Iowa Code §§ 669.3, .5 (2005). In 2006, the legislature amended the Act to replace the state appeals board with the present scheme of using the director of the department of management and the attorney general to dispose of the administrative claims filed under the Act. 2006 Iowa Acts ch. 1185, §§ 105, 107 (codified at Iowa Code §§ 669.3, .5). Additionally, the provisions of chapter 25 governing claims filed with the state appeals board no longer apply to claims brought under the ITCA. *See* Iowa Code § 25.1(1) (2007). Notwithstanding, the state appeals board in this case made a "determination to deny payment of the claim" filed by Rivera and directed her to pursue her claim further under the ITCA. The State in this case does not assert any irregularity in the method Rivera used to file her administrative claim under the ITCA.

of her administrative claim, which she filed within six months of the time the district court dismissed her original lawsuit for failing to first present her claim to the state appeals board. The district court found the savings clause only applied to improvidently filed claims not brought under the ITCA, and the clause was not activated when the district court dismissed her original lawsuit brought under the Act for failing to exhaust her administrative remedies. The district court granted the motion to dismiss.

Rivera appealed, and we transferred the case to the court of appeals. The court of appeals reversed the decision of the district court. It concluded the savings clause applied and the action was timely filed. It found section 669.13(2) gave Rivera six months to file her lawsuit after the state appeals board denied her administrative claim.[2] The State sought, and we granted, further review.

## II. Standard of Review.

We review a ruling by the district court on a motion for summary judgment for correction of legal errors. *Wallace v. Des Moines Indep. Cmty. Sch. Dist. Bd. of Dirs.*, 754 N.W.2d 854, 857 (Iowa 2008); *see also*

---

[2]The State also argued that Rivera's termination was not wrongful and was not in violation of any public policy. The State was entitled to argue this ground on appeal because it had asserted the ground in the district court, although the district court did not reach it. *DeVoss v. State*, 648 N.W.2d 56, 61 (Iowa 2002). The court of appeals disagreed, concluding Iowa Code chapter 135C evinces a clear public policy against discharges for whistleblowing and that a fact question existed as to whether Rivera engaged in a protected activity. *Rivera v. Woodward Res. Ctr.*, No. 11–1784, 2012 WL 5536117, at *10 (Iowa Ct. App. 2012). However, the State did not pursue this issue on further review, and we do not address it in this decision. *See State v. Doggett*, 687 N.W.2d 97, 99 (Iowa 2004) (stating we have the discretion to address issues raised on appeal, but not pursued in an application for further review). Instead, we conclude the issue of whether Rivera's termination was wrongful should be addressed in the first instance by the district court. *See Beck v. Phillips*, 685 N.W.2d 637, 646 (Iowa 2004) (confirming that whether to reach an alternative ground for affirmance that was urged in the district court "remains within our discretion"). Accordingly, we vacate this portion of the court of appeals decision.

Iowa R. App. P. 6.907. A district court may enter summary judgment only when no genuine issues of material of fact exist and the moving party is entitled to judgment as a matter of law. *See* Iowa R. Civ. P. 1.981(3). The facts are viewed in the light most favorable to the nonmoving party. *Garofalo v. Lamda Chi Alpha Fraternity*, 616 N.W.2d 647, 649 (Iowa 2000).

### III. Analysis.

Under the common law, the State enjoyed sovereign immunity from suits sounding in tort. *See Boyer v. Iowa High Sch. Athletic Ass'n*, 256 Iowa 337, 347–48, 127 N.W.2d 606, 612 (1964). This immunity, however, was partially waived by our legislature under the Iowa Tort Claims Act. Iowa Code § 669.4; *see also* 1965 Iowa Acts ch. 79 (currently codified as amended at Iowa Code ch. 669) (adding the Iowa Tort Claims Act). Now, a claim may be brought

> against the state of Iowa for money only, on account of damage to or loss of property or on account of personal injury or death, caused by the negligent or wrongful act or omission of any employee of the state while acting within the scope of the employee's office or employment, under circumstances where the state, if a private person, would be liable to the claimant for such damage, loss, injury, or death.

Iowa Code § 669.2(3)(*a*). The Act covers all tort claims against the state, subject to exceptions identified by the legislature. *Id.* §§ 669.2(3), .14; *see also Drahaus v. State*, 584 N.W.2d 270, 272 (Iowa 1998). Generally, tort liability is imposed on the state under the same circumstances that impose tort liability on a private person. Iowa Code § 669.2(3)(*a*).

Conceptually, the Act "does not itself create a cause of action." *Sanford v. Manternach*, 601 N.W.2d 360, 370 (Iowa 1999). Rather, "[i]t 'merely recognizes and provides a remedy for a cause of action already existing which would have otherwise been without remedy because of the

common law immunity.'" *Magers-Fionof v. State*, 555 N.W.2d 672, 674 (Iowa 1996) (quoting *Engstrom v. State*, 461 N.W.2d 309, 314 (Iowa 1990)). "Private citizens now have the right to sue the State, 'but only in the manner and to the extent to which consent has been given by the legislature.'" *Drahaus*, 584 N.W.2d at 272 (quoting *Swanger v. State*, 445 N.W.2d 2d 344, 346 (Iowa 1989)).

One of the most prominent conditions interposed by the ITCA mandates compliance with an administrative scheme before proceedings may be initiated in court against the state. Iowa Code §§ 669.3, .5. This scheme requires the claimant to first file a claim with the director of the department of management. *Id.* § 669.3(2). The claim must then be considered by the attorney general, who makes a final disposition of the claim before the claimant may sue in district court. *See id.* §§ 669.3, .5; *McGill v. Fish*, 790 N.W.2d 113, 117–18 (Iowa 2010). "Improper presentment of a claim . . . depriv[es] the district court of subject matter jurisdiction." *In re Estate of Voss*, 553 N.W.2d 878, 880 (Iowa 1996). Obviously, the central purpose of this prerequisite is to give the state an opportunity to investigate and resolve the claim before making the courts available to resolve the claim. *See* Iowa Code § 669.3(1). If a claim is resolved by the attorney general, a court action is unnecessary. Thus, the ITCA requires a two-step process to initiate a lawsuit against the state in tort. The first step is to submit the claim for administrative consideration. *See id.* §§ 669.3(1), .5. The second step is to file the claim in district court if the administrative process fails to resolve the claim. *See id.* § 669.5.

These two steps come into play in conjunction with the statute of limitations period to bring a lawsuit against the state for a tort. The exclusive statute of limitations under the Act provides:

> [A] claim or suit otherwise permitted under this chapter shall be forever barred, unless within two years after the claim accrued, the claim is made in writing and filed with the director of the department of management under this chapter. The time to begin a suit under this chapter shall be extended for a period of six months from the date of mailing of notice to the claimant by the attorney general as to the final disposition of the claim or from the date of withdrawal of the claim under section 669.5, if the time to begin suit would otherwise expire before the end of the period.

*Id.* § 669.13(1); *see also id.* § 669.13(3) (providing that the provision is the only statute of limitations applicable to claims defined under the Act).

Thus, the statute of limitations contemplates a series of segmented time periods that govern the timeliness of an action. A claim or lawsuit "permitted" under the Act is "forever barred" unless "the claim is made in writing and filed with the director of the department of management under [the Act]" within two years after it accrued. *Id.* § 669.13(1). Accordingly, the first time period for the two-year limitation period requires the filing of a written claim for administrative consideration. *See id.*

A second time period, however, governs the second step in the event the two-year limitation period does not provide enough time to file a lawsuit after the disposition of the administrative claim. The first step normally requires time to complete because the attorney general is directed to fully evaluate the claim. *See id.* § 669.3(1) (requiring the attorney general to "consider, ascertain, adjust, compromise, settle, determine, and allow any claim"). The Act essentially gives the attorney general up to six months to make a final disposition. *See id.* § 669.5(1). If the attorney general has not made a final determination within six months, the claimant may withdraw the claim and proceed to bring a lawsuit in district court without a final disposition. *Id.* Additionally, a claimant is not permitted to file a lawsuit in district court pending the

completion of the administrative review. *See Bensley v. State*, 468 N.W.2d 444, 445–46 (Iowa 1991). Thus, to accommodate the administrative process, the Act essentially imposes a second time period to complete the initiation of the lawsuit by the filing of a petition in district court. This time period is six months from the final disposition by the attorney general or from the withdrawal of the claim by the claimant. Iowa Code § 669.13(1).

Importantly, the statute also contains a savings clause for those instances when a claim was not originally pursued as a tort against the state under the Act, but was pursued outside the Act, and a state agency or court in that proceeding determined the ITCA provided "the exclusive remedy for the claim." *Id.* § 669.13(2). Section 669.13(2) provides:

> If a claim is made or filed under any other law of this state and a determination is made by a state agency or court that this chapter provides the exclusive remedy for the claim, the two-year period authorized in subsection 1 to make a claim and to begin a suit under this chapter shall be extended for a period of six months from the date of the court order making such determination or the date of mailing of notice to the claimant of such determination by a state agency, if the time to make the claim and to begin the suit under this chapter would otherwise expire before the end of the two-year period.

*Id.*

The savings clause essentially imposes a third limitation period if the two-year period fails to provide enough time to make an administrative claim and begin a lawsuit after a court or agency has determined that the exclusive remedy for the claimant is provided for under the Act. The two-step limitation period to "make a claim and to begin a suit under the [Act]" is extended for a period of six months from the time of the determination that the ITCA provides the exclusive

remedy. *Id.* Accordingly, three elements must be met before the savings clause will extend the statute of limitations: (1) a timely "claim" must be made or filed, (2) the claim must be made under a law of this state other than under chapter 669, and (3) an agency or court must make a determination that chapter 669 is the exclusive remedy for the claim. *See id.* All three elements must be satisfied.

The State claims the savings clause does not apply in this case because the only timely action filed by Rivera was the lawsuit brought in district court on September 26, 2008, and the savings clause only applies to administrative "claims," not lawsuits. The State relies heavily on language from our opinion in *Drahaus* "point[ing] out that various provisions in chapter 669 . . . draw a distinction between the terms *claim*, *action*, and *suit*." 584 N.W.2d at 274. Essentially, it argues a "claim" is what is filed with an administrative body, not a court. Additionally, the State asserts that, even if the savings clause applies to lawsuits, the lawsuit filed by Rivera on September 26, 2008, involved a tort claim against the State. Consequently, the State argues the lawsuit was filed under the law of the Act, not under another law, because the State did not waive its immunity "under any other law" other than the Act. Thus, the State claims the first two elements of the savings clause were not satisfied in this case.

Generally, "[t]he purpose of a savings statute is to prevent minor or technical mistakes from precluding a plaintiff from obtaining his day in court and having his claim decided on the merits." *Furnald v. Hughes*, 804 N.W.2d 273, 276 (Iowa 2011). It has long been recognized that:

> [A savings clause's] broad and liberal purpose is not to be frittered away by any narrow construction. The important consideration is that, by invoking judicial aid, a litigant gives

timely notice to his adversary of a present purpose to maintain his rights before the courts.

*Gaines v. City of New York*, 109 N.E. 594, 596 (N.Y. 1915). Yet, while we observed in *Furnald* that "arcane pleading" rules should not deprive plaintiffs from obtaining a resolution of their dispute on the merits, we also acknowledged courts should not construe savings clauses to swallow the predicate statute of limitation. 804 N.W.2d at 276. Although it is important to decide cases on the merits, it is also important that the policy behind the statute of limitations—to ensure trials occur when witnesses are fresh and nontestimonial evidence is still available—not be lost. *Id.* Thus, savings statutes are generally regarded as remedial and are liberally construed to provide for trials on the merits, but a proper balance must always be struck between the competing policies of the statute of limitations and the savings statute. *See id.*

We reject the argument by the State that the savings clause does not apply to lawsuits. Obviously, a claim can be distinguished from a suit. *Cf. Drahaus*, 584 N.W.2d at 274–75 (distinguishing between the terms "claim, action, and suit" as used in the Act and the term "action" in Iowa Rule of Civil Procedure 12 (emphasis omitted)). Yet, a claim also exists within a lawsuit, and we believe the approach taken by our legislature under section 669.13 reveals the savings clause applies broadly to any "claim made or filed" against the state, either with an administrative agency or the court.

We are primarily guided by the definition of the word "claim" provided by our legislature in the Act. *See* Iowa Code § 669.2(3)(*a*). We are bound to follow statutory definitions and to use them to build the foundation of our interpretive analysis. *Zimmer v. Vander Waal*, 780 N.W.2d 730, 733 (Iowa 2010). Under the Act, the legislature defined a

"claim" in the context of a substantive right, not a designation for relief sought from an administrative agency. *See* Iowa Code § 669.2(3)(*a*). Section 669.2(3)(*a*) specifically provides that a " '[*c*]*laim*' means . . . [a]ny claim against the state . . . for money . . . on account of damage . . . caused by the negligent . . . act . . . of . . . the state . . . ." *Id.*; *see also id.* § 669.2(3)(*b*). Thus, the term "claim" means a legal "claim," and this meaning is broad enough to include claims brought by a lawsuit.

This interpretation is in accord with the observations of a law review article written shortly after the Act's passage. Indeed, as the special assistant attorney general for the claims division wrote:

> [I]f a tort suit was commenced against a State agency under some other law of the State and the court determined that [Chapter 669] of the Iowa Code provided the exclusive remedy, a claim could seemingly be made against the State if the Act's limitation provision had not expired when the suit against the agency was commenced.

Don R. Bennett, *Handling Tort Claims and Suits Against the State of Iowa: Part I*, 17 Drake L. Rev. 189, 198–99 (1968). The author's imagined example of the savings clause's operation involves a *suit*, not merely an administrative claim. *See id.*

Admittedly, the statute of limitations under section 669.13(1) uses the phrase "a claim or suit," which fuels the State's argument that the legislature used the word "claim" in a different context for purposes of defining the statute of limitations. *See* Iowa Code § 669.2. Yet, section 669.2 instructs that the statutory definitions in the Act must be used "unless the context otherwise requires." Here, the context of the savings clause does not require the term "claim" to take on a meaning different from the statutory definition.

It is understandable that the legislature generally utilized the terms "claim" and "suit" under the Act. Immunity is abrogated for claimants only by utilizing the two-step process of submitting an administrative claim before instituting a tort lawsuit against the state in district court. Yet, the savings clause serves to capture tort claims against the state brought *outside* the Act and to redirect these claims into the Act once "a state agency or court" has ruled the Act provides the exclusive remedy. *Id.* § 669.13(2). Thus, "a claim" in the context of the savings clause does not require a distinction between administrative claims and court claims, as in the statute of limitations, because the procedures within the Act for a claimant to abrogate immunity have not yet come into play when a state agency or court has only determined the Act provides the exclusive remedy for the claim. Moreover, the interpretation by the State would severely limit the scope and purpose of the savings clause. It would limit the clause to those instances in which a tort victim might pursue a claim before a state agency outside the Act and would exclude a claim first pursued in district court.

The interpretation of a statute can always reach different results when an ambiguity exists in the statute, but there is no solid reason offered in this case to explain why the legislature would have intended to enact a savings clause that would rarely save a misguided litigant. *See Zimmer*, 780 N.W.2d at 733. Considering the purposes of the statute of limitation and the purposes of a savings clause, there is no justification for distinguishing between administrative claims and court claims within a savings clause. The purposes of the statute of limitations are not better served by limiting the savings clause to administrative claims. For sure, our policy for claims to be decided on the merits applies equally to claims before an agency or a court. Finally, section 669.13(2) is a

remedial clause, and we must consider the consequences of the various interpretations. *State v. Dohlman*, 725 N.W.2d 428, 431 (Iowa 2006). The need for a savings clause under the Act would appear to be the greatest for claimants who pursue the usual course of litigation by the filing of a lawsuit against the state without understanding the need to exhaust a special statutory procedure. There is simply no reason for the legislature to restrict the remedial effect of the savings clause to exclude court actions that would not adversely impact the purposes of the statute of limitations any more than another claim saved under the clause.

Thus, we proceed to consider the question whether the savings clause captures the situation in this case in which a plaintiff timely filed a lawsuit against the state based on a tort, but did not file the claim under the procedures set out in the ITCA. This inquiry considers the second element of the savings clause that the claim be made or filed "under any other law of this state."

The State primarily relies on our opinion in *Bensley*. In that case, the estates of three decedents initiated a tort claim against the state, alleging the negligent maintenance of a highway caused the death of the decedents. *Bensley*, 468 N.W.2d at 444. The claims accrued on February 4, 1983. *Id.* The estates first filed an administrative claim with the state appeals board on June 28, 1984. *Id.* at 444–45. The following day, the estates filed suit against the state in district court based on the same claims filed with the board, believing they could simply defer proceeding on the lawsuit until the administrative proceedings were complete. *Id.* at 445. Approximately five months later, the state rejected the administrative claims, but only notified two of the estates. *Id.* An irregularity in mailing prevented the third estate from receiving notice. *Id.* The 1984 lawsuit was then dismissed by the district court on

March 9, 1987, because it had been filed before the administrative remedies were exhausted, as required under the ITCA. *Id.* The plaintiffs then filed a second lawsuit in district court on May 15, which was dismissed by the court in response to a motion for summary judgment as barred by the two-year statute of limitations. *Id.* On appeal from the dismissal order, the plaintiffs argued their first lawsuit filed in 1984 was under "any other law of this state," and the dismissal of the lawsuit in 1987 therefore extended the statute of limitations period for six months under the savings clause. *Id.* at 446.

We held the savings clause under the ITCA did not extend the limitation period. *Id.* at 446. We relied on the requirement of the second element of the clause that a claim be filed under any other law and concluded it "does not allow for an extension of the statute of limitations when the initial suit is filed under [the Act]." *Id.* Thus, the estates of the decedents that received notice of the denial of administrative claims were barred under the two-year statute of limitations from suing under the ITCA because the six-month savings clause did not apply to the dismissal of the first lawsuit prematurely brought under the Act. *Id.* In other words, the first lawsuit was brought under the ITCA, not another law of this state. *Id.* Accordingly, the second element of the savings clause was not satisfied. *Id.*

While *Bensley* appears to support the State's narrow view of the savings clause, one critical fact exists in the case that is not present in this case. In *Bensley*, the plaintiffs actually filed their claims *under* the ITCA. The Act requires tort claims to be filed by first filing an administrative claim, which is precisely what the plaintiffs did in *Bensley*. Additionally, the estates in *Bensley* acknowledged they had proceeded under the ITCA in filing their lawsuit. *See id.* at 446. Thus,

the original lawsuit was not a claim filed "under any other law of the state." *Id.*

In this case, Rivera did not file her claim set out in her 2008 lawsuit *under* the ITCA. To file under the Act, she needed to first file an administrative claim. *See* Iowa Code § 669.5; *Swanger*, 445 N.W.2d 349–50 (recognizing exhaustion of procedural requirements is jurisdictional). Instead, she filed her claim as a common law action in district court. Notwithstanding, the State argues Rivera's claim alleged a tort against the State, and it necessarily fell within the definition of a "claim" under the Act. In this way, the State asserts the petition filed on September 26, 2008, constituted a claim filed under the Act, even though Rivera did not follow the procedure under the Act, and it fell outside the requirement of the second element for the claim to be filed "under any other law of the state."

The statute does not lend itself to such a narrow reading. Obviously, any time a court or an agency, in the course of litigation brought independent of the procedural requirements of the ITCA, determines the Act provides the exclusive remedy for the claim brought by a plaintiff, the claim brought in the litigation was actually a tort claim permitted to be brought under the Act. Under the State's view, the savings clause would never serve to save a claimant who timely brought the claim outside the ITCA, but failed to understand the claim needed to be brought under the Act. This view is so restrictive it undermines the main purpose of a savings clause to prevent procedural missteps from denying a claimant an opportunity to have the claim decided on its merits. We strive to interpret statutes consistently with their purpose. *Dohlman*, 725 N.W.2d at 431.

The State correctly observes that Rivera should have brought her claim for wrongful discharge under the ITCA. For more than twenty-five years, we have considered a claim for wrongful discharge in violation of public policy to be an intentional tort claim. *See, e.g., Berry v. Liberty Holdings, Inc.,* 803 N.W.2d 106, 109–10 (Iowa 2011) (describing the proof a plaintiff must offer "[t]o prevail on an intentional tort claim of wrongful discharge from employment in violation of public policy"); *Davis v. Horton*, 661 N.W.2d 533, 535 (Iowa 2003) (same); *Springer v. Weeks & Leo Co.*, 429 N.W.2d 558, 560 (Iowa 1988) ("We believe a cause of action should exist for tortious interference with the contract of hire when the discharge serves to frustrate a well-recognized and defined public policy of the state."); *see also Abrisz v. Pulley Freight Lines, Inc.*, 270 N.W.2d 454, 455 (Iowa 1978) (mentioning that many courts have recently recognized the intentional tort of wrongful discharge in violation of public policy).

Yet, the savings clause does not contain any language to suggest it is concerned with the underlying reasons for not first proceeding under the ITCA when a court or agency subsequently determines the Act provides the exclusive remedy. Instead, the language of the savings clause seeks to determine if the claim was pursued under a law other than the Act. The savings clause does not turn on whether the claim should have been pursued under the Act because the claim constituted a tort against the state. The important point under the savings clause is that the first claim was not filed under the Act when it should have been filed under the Act, and the *only reason* the first action was dismissed was because the Act provided the exclusive remedy. If the first action was dismissed for some other reason, such as the statute of limitations otherwise applicable in the absence of the Act, *see, e.g.,* Iowa Code

§ 614.1(2) (requiring actions for personal injury to be brought within two years of accrual), the savings clause would not save the claim under the third element of the clause. *See Furnald*, 804 N.W.2d at 276 (recognizing the purpose of a savings clause is to allow a diligent plaintiff the chance to renew a suit dismissed on grounds other than the merits).

Additionally, the phrase "under any other law of this state" does not limit the savings statute to claims originally brought under another statute of this state. Common law is law of this state as much as statutory law is law of this state. *See Iowa Civil Liberties Union v. Critelli*, 244 N.W.2d 564, 568 (Iowa 1976) ("Although not expressly declared to be part of the law of this state by constitution or statute, the common law has always been recognized as in force in Iowa."); *accord Dier v. Peters*, 815 N.W.2d 1, 10 (Iowa 2012). There would be no reason for our legislature to limit the savings clause to claims recognized by statute. Such an interpretation would exclude a common law tort claim from the savings statute, but include a comparative fault tort claim now recognized under chapter 668 of the Code. We seek to "avoid strained, impractical, or absurd results" in interpreting statutes. *Welp v. Iowa Dep't of Revenue*, 333 N.W.2d 481, 483 (Iowa 1983) (citation and internal quotation marks omitted).

This case illustrates how the savings clause was intended to operate by our legislature. Rivera timely filed her claim against the State in district court under the statute of limitations governing tort claims in Iowa. The district court ultimately determined, however, the claim was subject to the ITCA and dismissed the lawsuit for failing to exhaust the administrative remedies as required under the Act. The savings clause of the Act then gave Rivera six months from that determination to proceed under the Act.

Accordingly, we hold the savings clause under section 669.13(2) applies both to claims made before a state agency and claims supporting a suit filed in court. We also hold that a claim is made or filed "under any other law of this state" when a claim is pursued without following the procedural steps required under the Act. This interpretation strikes the proper balance between the purpose and goals of the statute of limitations and those of a savings clause. The purpose of a savings statute is not to promote the timeliness and efficiency of lawsuits, but to give diligent but mistaken litigants an opportunity to have their claims decided on the merits. Moreover, our savings statute does not choose those claims that will be saved under the statute and those that will not be saved under the statute by passing judgment on the reason an attorney or claimant may have mistakenly failed to utilize the administrative procedures under the Act in first pursuing the claim. Courts should not limit a savings clause to exclude a class of cases simply to exclude a class of cases.

**IV. Conclusion.**

Rivera properly complied with the savings clause once the district court determined the ITCA provided the exclusive remedy for her claim. We vacate the decision of the court of appeals and reverse the judgment of the district court.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED; CASE REMANDED.**

All justices concur except Mansfield and Waterman, JJ., who dissent.

**MANSFIELD, Justice (dissenting).**

I respectfully dissent. I believe the majority misreads Iowa Code section 669.13(2). A common law tort claim authorized only by chapter 669 is not a claim under "any other law." Based on its statutory misreading, the majority allows this litigant to roam from court to agency and back to court again, over an incident that occurred in 2006. This undermines the goals of timeliness and efficiency that underlie chapter 669.

Section 669.13 provides:

> 1. Except as provided in section 614.8, a claim or suit otherwise permitted under this chapter shall be forever barred, unless within two years after the claim accrued, the claim is made in writing and filed with the director of the department of management under this chapter. The time to begin a suit under this chapter shall be extended for a period of six months from the date of mailing of notice to the claimant by the attorney general as to the final disposition of the claim or from the date of withdrawal of the claim under section 669.5, if the time to begin suit would otherwise expire before the end of the period.

> 2. If a claim is made or filed under any other law of this state and a determination is made by a state agency or court that this chapter provides the exclusive remedy for the claim, the two-year period authorized in subsection 1 to make a claim and to begin a suit under this chapter shall be extended for a period of six months from the date of the court order making such determination or the date of mailing of notice to the claimant of such determination by a state agency, if the time to make the claim and to begin the suit under this chapter would otherwise expire before the end of the two-year period. The time to begin a suit under this chapter may be further extended as provided in subsection 1.

> 3. This section is the only statute of limitations applicable to claims as defined in this chapter.

Iowa Code § 669.13 (2007).

As subsection 2 makes clear, the original claim must have been filed or made under "other law." The common law of torts is *not* other law; it is law covered by chapter 669. *See McGill v. Fish*, 790 N.W.2d 113, 120 (Iowa 2010) ("[T]he [Iowa Tort Claims Act (ITCA)] did not create a new cause of action, but recognized a remedy for existing causes of action previously unavailable because of sovereign immunity."). The dissenting judge on the court of appeals makes this point very cogently. *See Rivera v. Woodward Res. Ctr.*, No. 11–1784, 2012 WL 5536117, at *11 (Iowa Ct. App. Nov. 15, 2012) (Eisenhauer, C.J., dissenting). At all times, Rivera's lawsuit was against the State of Iowa for money only, on account of loss of property (i.e., employment), caused by the wrongful act of employees of the state acting within the scope of their office or employment. *See* Iowa Code § 669.2(3)(*a*). No other legal basis for an action was asserted.

In my view, the majority decision is contrary to *Bensley v. State*, 468 N.W.2d 444 (Iowa 1991). There, a fatal car accident occurred on February 4, 1983, on a state highway. *Bensley*, 468 N.W.2d at 444. On June 28, 1984, three estates filed claims with the state appeal board alleging that the state's negligent maintenance of the highway caused the deaths. *Id.* The next day, June 29, without waiting for a response from the appeal board, the estates filed a lawsuit against the state in district court. *Id.* at 445. On November 26, two of the estates were notified by the appeal board that their claims had been denied. *Id.* at 444–45. Over two years later, on March 9, 1987, the district court dismissed the estates' first lawsuit. *Id.* at 445. On May 15, the estates commenced a second action, which the district court then also dismissed. *Id.*

On appeal from the latter dismissal, we ruled that the second lawsuit was properly dismissed as to the two estates that had received a

notice of administrative denial in 1984. *Id.* at 447. We specifically rejected the plaintiffs' argument that the filing of the first suit could salvage their second suit under what is now section 669.13(2). *Id.* We explained that this section "requires that a claim be filed under any *other* law of this state before the possibility of extending the statute of limitations exists." *Id.* The first suit was not such a claim. *Id.*

In *Bensley*, we did say that the first suit was "filed under chapter 25A [now chapter 669]." *Id.* But as the State has demonstrated, in *Bensley* (as here), the petition was simply brought as a common law action without any reference to the ITCA. Such a claim, we concluded in *Bensley*, was not a claim under "any other law." *Id.* In short, *Bensley* indicates that to take advantage of subsection 2, the plaintiff must have asserted some basis other than the common law of torts for the initial claim.

The majority also disregards the context in which section 669.13 was enacted. Historically, the rule of sovereign immunity protected the state from suit. Everyone knew that. *See* Don R. Bennett, *Handling State Tort Claims and Suits Against the State of Iowa: Part I*, 17 Drake L. Rev. 189, 189 (1968) [hereinafter Bennett] ("Prior to passage of the Iowa Tort Claims Act in 1965, the maxim that 'the King can do no wrong' prevailed in Iowa. No tort action could be maintained against the State or its agencies." (footnote omitted)).

In 1965, to great fanfare, all that was changed when the general assembly adopted the ITCA. 1965 Iowa Acts ch. 79 (currently codified as amended at Iowa Code ch. 669). At that time, the legislature included section 13, which had substantially the same wording as section 669.13 today. *Compare* Iowa Code § 25A.13 (1966), *with id.* § 669A.13 (2013).

Given this historical context, I cannot accept the majority's notion that subsection 2 was designed to protect the attorney who had just fallen off the apple cart in 1965 and did not know you could not sue the state for a tort at common law. That defies practical reality. At the time, any need for such protection for attorneys would have seemed quite odd. Rather, subsection 2's purpose was to protect the attorney who brought a claim against the state based on some other statutory scheme that also involved a waiver of sovereign immunity but which was ultimately found to be inapplicable.[3] "[A]ny other law of this state" would have been clearly understood to mean some positive law *other than* a common law tort claim supported only by the ITCA. This is confirmed by a contemporary observer:

> [I]f a tort suit was commenced against a State agency under some other law of the State and the court determined that Chapter 25A [now chapter 669] of the Iowa Code provided the exclusive remedy, a claim could seemingly be made against the State if the Act's limitation provision had not expired when the suit against the agency was commenced.

Bennett, 17 Drake L. Rev. at 198–99 (footnote omitted). Notably, this commentator makes clear that the "tort suit" has to be commenced "under some other law of the State," not merely the law of torts. *See id.*

Finally, my colleagues contend it would lead to "strained, impractical, or absurd results" if the savings clause in section 669.13(2) applied to claims under other statutes but not common law tort claims. Their specific example involves claims against the state for contribution,

---

[3]The State has provided a couple of examples of such schemes. For instance, employees of the State of Iowa have been able to bring workers' compensation claims against the state for the past 100 years. *See* Iowa Code § 85.2 (2013) (predecessor codified at Iowa Code § 2477–m(b) (Supp. 1913)). When the ITCA was enacted, subsection 2 served a useful purpose by protecting the individual who had brought a workers' compensation claim against the state in the event it was later determined the individual was an independent contractor.

which are governed by a separate statute (chapter 668). According to the majority, those claims would end up being treated differently from common law tort claims against the state brought by an injured party.

This is a nice theoretical point, but the actual statutes do not back it up. Section 668.10(2) provides, "In any action brought pursuant to this chapter, the state shall not be assigned a percentage of fault for contribution unless the party claiming contribution has given the state notice of the claim pursuant to section 669.13." Thus, a tortfeasor who, like Rivera, filed a lawsuit against the state without having complied with section 669.13 would get no tolling benefit. In fact, such a claimant would be totally out of luck because he or she would have no line in the jury verdict assigning fault to the state on which he or she could rely. In other words, the legislature recognized the need for consistency and provided that a tortfeasor who walks into court filing a contribution claim against the state, without complying with the notice requirement, would fare no better than an injured party who did the same. The majority's example is not an issue.

For the foregoing reasons, I respectfully dissent.

Waterman, J., joins this dissent.