# IN THE COURT OF APPEALS OF IOWA

No. 20-0837
Filed June 16, 2021

**SIOUX CITY TRUCK SALES, INC.,**
 Plaintiff-Appellant,

**vs.**

**IOWA DEPARTMENT OF TRANSPORTATION and PETERBILT MOTORS COMPANY,**
 Defendants-Appellees,

**and**

**ALLSTATE PETERBILT OF CLEAR LAKE,**
 Intervenor.
_____

  Appeal from the Iowa District Court for Polk County, William P. Kelly, Judge.


  Sioux City Truck Sales, Inc. appeals a judicial review order affirming the Iowa Department of Transportation's approval of an additional motor vehicle dealership franchise in its existing area of responsibility.  **REVERSED AND REMANDED TO THE AGENCY.**


  Jeffrey M. Goldstein of Goldstein Law Firm, PLLC, Washington D.C., pro hac vice, and Anthony P. Lamb of Klass Law Firm, L.L.P., Sioux City, for appellant.

  Stephen E. Doohen of Whitfield & Eddy, P.L.C., Des Moines, and Mark T. Clouatre, John P. Streelman, and Jacob F. Fischer of Nelson Mullins Riley & Scarborough LLP, Denver, Colorado, pro hac vice, for appellee Peterbilt Motors Company.

Thomas J. Miller, Attorney General, and Michelle E. Rabe, Assistant Attorney General, for appellee Iowa Department of Transportation.

Joseph G. Gamble of Duncan Green, P.C., Des Moines, and John N. Bisanz, Jr. of Henson & Efron, P.A., Minneapolis, Minnesota, pro hac vice, for intervenor Allstate Peterbilt of Clear Lake.

Heard by Bower, C.J., and Tabor and Ahlers, JJ.

**TABOR, Judge.**

Sioux City Truck Sales, Inc. (SCTS)[1] entered a franchise agreement with Peterbilt Motors Company to establish parts and service dealerships for customers within an assigned area of responsibility. Three years later Peterbilt asked the Iowa Department of Transportation (DOT) for permission to add a dealer-franchisee in Clear Lake, which was within the "community" served by SCTS. SCTS objected, claiming Peterbilt could not show good cause for appointing an additional dealer under Iowa Code chapter 322A (2019). The DOT approved Peterbilt's request. SCTS appeals, urging that the agency and judicial review decisions wrongly substituted a narrow meaning of "community" for the statutory definition when assessing good cause.

Because the legislature provided a clear and unambiguous definition of "community" to be used throughout the chapter, we find the agency and the district court erred in resorting to principles of statutory construction to alter its plain meaning. Thus we reverse the judicial review decision and remand to the agency for further proceedings consistent with this opinion.

## I. Facts and Prior Proceedings

Peterbilt is a commercial truck manufacturer that distributes its products through a network of dealers nationwide. The dealers then sell and service Peterbilt products in an assigned area of responsibility stipulated in their franchise agreements. The scope of the dealer's coverage area is negotiated by the parties when they first enter into the franchise. Within those boundaries, Peterbilt

---

[1] SCTS is now doing business as Midwest Peterbilt Group.

approves the number and location of its dealerships. Peterbilt may not assign an additional dealer in an existing dealer's area of responsibility without showing good cause and that it is in the public interest. *See* Iowa Code § 322A.4.

SCTS has owned and operated five Peterbilt dealerships in Iowa and Nebraska since 2013. Under the governing franchise agreement, SCTS established full-service facilities in Sioux City; Council Bluffs; Altoona; and Norfolk, Nebraska, as well as a parts-only store in Lincoln, Nebraska. As the sole Peterbilt dealer in that region, SCTS agreed to service customers in most surrounding counties. In an attached addendum, the parties stipulated that all of those counties taken together comprised SCTS's "non-exclusive" area of responsibility.[2]

In spring 2014, Peterbilt approached SCTS President Brad Wilson with a proposal to open a full-service dealership in Clear Lake or Mason City. Peterbilt insisted the Clear Lake area presented an ideal location for growth because it neighbored a major interstate with heavy truck traffic and was far from any other Peterbilt dealer. Yet Wilson showed no interest in pursuing that new location. Later that fall, Peterbilt again asked Wilson to consider opening a dealership in Clear Lake. In a detailed report, Peterbilt assessed the location's market viability based on new truck registrations, fleet numbers, traffic flow, and major competitors doing business in the area. The report identified Clear Lake as a "white spot" in SCTS's area of responsibility with high sales potential. Despite those efforts, Wilson appeared unpersuaded.

---

[2] The parties did not define "non-exclusive" in the franchise agreement. But the district court noted that Peterbilt used this term to describe its ability to appoint additional dealers in another dealer's area and to establish new service locations.

After two years of pushing for the new location, Peterbilt decided to pursue its proposal without SCTS. In November 2016, Peterbilt gave Wilson written notice of intent to appoint an additional dealer in SCTS's area of responsibility. That letter stated: "As provided in Addendum C,[3] this decision is within Peterbilt's sole discretion and no grounds are required to be stated in support of the decision. Nevertheless, Peterbilt's decision is motivated by the need to increase representation within the non-exclusive area, specifically near Clear Lake." Peterbilt clarified that it was seeking a "dual assignment" rather than altering SCTS's existing area under the franchise agreement.

Wilson replied: "I'm not sure how you have come to this conclusion but we have been looking for a location in Clear Lake for some time now and are currently reviewing a lease opportunity on a 6000 sqft building. Your letter concerns me that you may authorize another dealer there even if we have a location." Indeed, just a few weeks later Wilson sent Peterbilt a new site proposal for a parts-only store near "US Hwy 18 midway between Mason City, IA and Clear Lake, IA, . . . four and half miles east of Interstate-35." Wilson added in his letter, "Starting with a parts store will allow us to better determine the market potential for a new [parts-and-service] facility while we find a property to acquire and design a facility that will profitably improve Peterbilt's market share and customer support." Before obtaining Peterbilt's approval, SCTS signed the lease agreement in early December.

---

[3] This provision stated: "Upon providing DEALER one hundred and eighty (180) days prior written notice, PETERBILT may in its sole discretion . . . appoint additional dealers in the area without altering the area. Establishing new points in the Dealer[']s relevant market area is subject to **Iowa** statutes."

Peterbilt rejected the parts-only proposal. It reasoned: "Our business needs in that region require a minimum of a parts and service facility with plans to eventually grow into a full service dealership." It also stressed "any new facility approved by Peterbilt Motors Company will not change the intent to pursue dual assignment of the non-exclusive area." Three months later, Peterbilt discovered that SCTS opened the parts-only store without its authorization. Peterbilt believed that the unauthorized location constituted "a material breach" of the franchise. Threatening to sue for trademark infringement, Peterbilt directed SCTS to "remove from the premises within ten days, all Peterbilt . . . products, merchandise, signage, and services."

After complying with those directives, SCTS submitted a revised proposal for a new parts-and-service store in a different Clear Lake location. Peterbilt again rejected the proposal.

In August 2017, Peterbilt applied to the DOT seeking appointment of Allstate as an additional dealer-franchisee in the Clear Lake area. *See* Iowa Code § 322A.6. Peterbilt identified twenty-three counties within SCTS's area of responsibility that would be subject to the dual assignment. SCTS challenged that request before the Department of Inspections and Appeals. After a three-day evidentiary hearing, an administrative law judge (ALJ) endorsed Peterbilt's application. SCTS appealed to the DOT. But the DOT upheld the ALJ's decision. SCTS then sought judicial review. Finding no reversible error in the agency's interpretation, the district court affirmed. SCTS now appeals that judicial review decision.

**II. Scope and Standard of Review**

In appeals from judicial review of agency action, we apply the standards under Iowa Code section 17A.19(10) to see if we reach the same conclusions as the district court.  *Colwell v. Iowa Dep't of Human Servs.*, 923 N.W.2d 225, 231 (Iowa 2019).  "If they are the same, we affirm; otherwise we may reverse."  *Welch v. Iowa Dep't of Transp.*, 801 N.W.2d 590, 594 (Iowa 2011).

Because the legislature has not clearly vested the DOT with interpretive authority in chapter 322A, we review the agency decision for correction of legal error.  *See Cowell*, 923 N.W.2d at 231–32; *City of Des Moines v. Iowa Dep't of Transp.*, 911 N.W.2d 431, 439 (Iowa 2018) (finding DOT lacked interpretative authority because relevant statutes did not expressly grant it).  Under this standard, we will reverse if the agency decision rested "on an erroneous interpretation of the law."  *Gartner v. Iowa Dep't of Public Health*, 830 N.W.2d 335, 343 (Iowa 2013); *see* Iowa Code § 17A.19(10)(c).  We need not defer to the DOT's interpretation of chapter 322A.  *See Welch*, 801 N.W.2d at 594.  If we find reversible error, we "are free to substitute our judgment de novo for the agency's interpretation."  *Id.*

**III. Analysis**

**A.  Defining "Community"**

This appeal turns on the meaning of "community" as that word appears in Iowa Code chapter 322A.  We must decide whether the DOT and the district court used the wrong definition when assessing good cause to appoint an additional dealer-franchisee under section 322A.16.

But before turning to that definition, we offer a brief overview of the provisions governing motor vehicle franchises.  Broadly speaking, chapter 322A

aims "to provide for fair trade practices by motor vehicle franchisors." 1970 Iowa Acts ch. 1160, at 206. The preamble identifies dual purposes for the legislation. *Id.* First, it highlights the public interest in ensuring "that once franchises are established in a community, the requisite services are continued for the benefit and safety of vehicle buyers and the public at large." *Midwest Auto. III, LLC v. Iowa Dep't of Transp.*, 646 N.W.2d 417, 423 (Iowa 2002). Second, it recognizes "the opening of additional dealerships of any line-make which is at that time represented in a community may adversely affect the ability of all dealerships of all product lines to provide efficient and proper motor vehicle service in the community and, therefore, additional dealership should not be opened in a community unless it is first established that there is good cause therefor." 1970 Iowa Acts ch. 1160, at 206.

No question, that overview lends context to the question before us. But the preamble's clues to legislative intent are not essential to our analysis. *See* Iowa Code § 4.6 (2021) (explaining "if a statute is ambiguous," we may consider its preamble when determining legislative intent). Indeed, we need not hunt for legislative intent because the code provides an unambiguous definition of the key term. *See Krull v. Thermogas Co.*, 522 N.W.2d 607, 612 (Iowa 1994) ("When the statutory language is plain and its meaning is clear, we should not reach for meaning beyond the statute's express terms or resort to rules of statutory construction."). The legislature defined "community" as "the franchisee's area of responsibility as stipulated in the franchise." Iowa Code § 322A.1(2). The legislature instructed that definition must be used throughout the chapter "unless the context otherwise requires." *Id.* § 322A.1.

Critical to this appeal, the word "community" appears in the provisions governing Peterbilt's request to appoint Allstate as a new dealer in SCTS's existing area of responsibility. Section 322A.4 sets forth the requirements for a franchiser requesting an additional dealership franchise. That provision states:

> No franchiser shall enter into any franchise for the purpose of establishing an additional motor vehicle dealership in any community in which the same line-make is then represented, unless the franchiser has first established in a hearing held under the provisions of this chapter that there is good cause for such additional motor vehicle dealership under such franchise, and that it is in the public interest.

*Id.* § 322A.4.

From there, the statute requires the DOT to make a good-cause determination based on the guidelines in section 322A.16, which states:

> In determining whether good cause has been established for entering into an additional franchise for the same line-make, the department of inspections and appeals shall take into consideration the existing circumstances, including, but not limited to:
> 1. Amount of business transacted by other franchisees of the same line-make in that community.
> 2. Investment necessarily made and obligations incurred by other franchisees of the same line-make, in that community, in the performance of their part of their franchises.
> 3. Permanency of the investment.
> 4. Effect on the retail motor vehicle business as a whole in that community.
> 5. Whether it is injurious to the public welfare for an additional franchise to be established.
> 6. Whether the franchisees of the same line-make in that community are providing adequate consumer care for the motor vehicles of the line-make which shall include the adequacy of motor vehicle services facilities, equipment, supply of parts and qualified service personnel.

As its sole contention on appeal, SCTS argues the agency and the district court both took a wrong turn by applying a different definition for "that community" in section 322A.16 than the legislature prescribed in section 322A.1. On the way

to addressing that argument, we consider the various interpretations reached in these proceedings.

### 1. Agency's Interpretation

We start with the ALJ's view of section 322A.16. The ALJ decided "little doubt exists there was good cause to support an additional franchise that would result in a dealership in the Clear Lake area, which is the community at issue under the statute." After defining community as the twenty-three counties in Peterbilt's proposal, the ALJ questioned whether the first two factors in section 322A.16 even applied "since no other Peterbilt franchisees have been assigned the Clear Lake area." The ALJ reflected: "This is not a case where two franchisees have an overlapping [area of responsibility] such as in a city, and the issue is whether a third franchise should be granted for the area." The ALJ found the four remaining factors supported Peterbilt's request for an additional franchise. After discussing SCTS's hesitancy to open a dealership in Clear Lake, the ALJ concluded:

> What proves dispositive is Peterbilt's concern that having an unwilling dealer will harm it and the market. This is a reasonable and legitimate business concern that has particular salience in this case, as it is clear that [SCTS] is only acting because of the dual assignment and that it has tried to do the minimal amount necessary to avoid dual assignment.

In its appeal to the DOT, SCTS argued the ALJ considered the wrong "community" when applying the good-cause factors. SCTS insisted the relevant "community" was the area of responsibility stipulated in the franchise agreement and not the area subject to the proposed dual assignment. In other words, SCTS urged there was no reason to stray from the statutory definition.

The DOT rejected SCTS's position, holding "the only logical community to be used for [the good-cause] analysis is the area that will be dual assigned, or the area that both [SCTS and Allstate] will share."  The DOT offered this explanation for departing from the statutory definition of community:

> Suffice it to say that consideration of the good cause factors, which include comparing the amount of business transacted by the franchisees, the necessary investment to be made, the permanency of the investment in that community, can only be meaningful if the community is defined in the same way for both entities, as SCTS's entire AOR/community is not subject to dual assignment.

The DOT noted it would be "illogical" to find good cause based on the entire area of responsibility defined in the franchise when SCTS admitted "that the Clear Lake area [was] not adequately served for parts and service despite its activities and investment throughout its existing AOR."  Plus the DOT found that the narrower definition of "community" better "capture[d] the public interest in establishing and maintaining for consumers continued and adequate access to dealer services in all relevant and appropriate areas."

The DOT agreed with the ALJ that, under this factual scenario, "community" meant the Clear Lake area (the twenty-three counties in Peterbilt's proposal) instead of SCTS's entire area of responsibility under the franchise—as defined in section 322A.1(2).  Relying on that fact-specific definition of community, the DOT held "the ALJ correctly concluded that Peterbilt demonstrated, by a preponderance of the evidence that it has proper cause to enter into an additional franchise for the purposes of establishing an additional dealership."

*2. District Court's Interpretation*

The district court upheld the agency decision. But it took a different approach to statutory interpretation. Guided by this disclaimer, "unless context otherwise requires," the court determined the legislature must have intended the definition of "community" to vary based on the context in which the word appeared. *See id.* § 322A.1. In support, the court cited *Brakke v. Iowa Department of Natural Resources*, 897 N.W.2d 522, 534 (Iowa 2017), which noted an individual word "cannot be wrenched from the statutory language that follows it." In essence, the court took the disclaimer as clearance to bypass the statutory definition and resort to the rules of statutory construction.

In construing the relevant statutes, the court focused on the articles "any" in section 322A.4 and "that" in section 322A.16. The court believed the inclusion of those two modifiers signaled a departure from the statutory definition of community.

As a first step, the court construed "any community" in section 322A.4 to mean "any portion of an area of responsibility assigned under a governing franchise agreement."

As a second step, the court applied that new, unstructured definition in section 322A.16. The court criticized SCTS for suggesting the statutory definition of "community" governed. The court reasoned: "To adopt [SCTS's] suggestion would be to render the legislature's use of 'that' meaningless." In the court's estimation, the phrase "that community" in section 322A.16 was undefined. Under the court's analysis, the legislature would not have included "that" unless it intended to modify the word "community." Relying on dictionary definitions of

"that," the court decided the legislature intended to narrow the meaning of "community" under section 322A.16.

After taking those two steps, the court held "that community" meant "the portion of the franchisee's community that the franchiser is seeking to appoint an additional dealer in" or "the area being considered for dual assignment."

### 3. Our Approach

As the reviewing court, we are entitled to forge "an independent determination of the meaning of pertinent statutes." *Midwest Auto.*, 646 N.W.2d at 422. Although we are mindful of the DOT's expertise in this area when it comes to findings of fact, "the final interpretation of the law rests with this court." *Id.* (quoting *Noble v. Lamoni Prods.*, 512 N.W.2d 290, 292 (Iowa 1994)).

Reprising its arguments before the district court, SCTS contends it was "clear error" for the agency to adopt "a contrived and wholly malleable definition" of community when the legislature supplied an unambiguous statutory definition. Citing a lack of ambiguity in the statute, SCTS contends the court erred in altering the meaning of "community" based on the legislature's use of different articles in section 322A.4 and section 322A.16.

In response, Peterbilt argues the phrase "that community" is ambiguous because it is unclear whether the area at issue is that of "the *protesting* dealer (SCTS) or the *proposed* dealer (Allstate)." Peterbilt urges: "Once Section 322A.16 and Chapter 322A are construed in context, it is clear that SCTS's community is not the one at issue." Put differently, Peterbilt claims the district court properly turned to context to resolve a textual ambiguity. In the alternative, Peterbilt argues

even absent ambiguity, the court could resort to context because section 322A.1 includes the disclaimer: "unless the context otherwise requires."

Neither of Peterbilt's arguments justifies applying a different definition of "community" than the legislature prescribed.  To interpret a statute, we begin with its text.  *See Kay-Decker v. Iowa St. Bd. of Tax Revenue*, 857 N.W.2d 216, 223 (Iowa 2014); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* at 56 (2012) [hereinafter Scalia & Garner, *Reading Law*].  When the legislature chooses to define a word, we are "obligated to apply the statutory definition . . . as written, absent an ambiguity in that definition."  *Sherwin-Williams Co. v. Iowa Dep't of Revenue*, 789 N.W.2d 417, 425 (Iowa 2010); *see Rivera v. Woodward Res. Ctr.*, 830 N.W.2d 724, 730 (Iowa 2013) ("We are bound to follow statutory definitions and to use them to build the foundation of our interpretive analysis.").

An ambiguity exists "if reasonable minds could disagree as to its meaning." *Cowell*, 923 N.W.2d at 232.  "We determine whether a statute is ambiguous or unambiguous by reading the statute as a whole."  *State v. Richardson*, 890 N.W.2d 609, 616 (Iowa 2017) (quoting *State v. DeSimone*, 839 N.W.2d 660, 666 (Iowa 2013)).  When the same term appears throughout the statutory text, we may reasonably conclude the meaning remains the same.  *See id.* at 617; Scalia & Garner, *Reading Law*, at 170.

Rather than use these traditional interpretive tools, the district court placed inordinate value on the introductory phrase "unless context otherwise

requires."[4] But such conditional language becomes relevant only when an ambiguity exists in either (1) the definition itself or (2) the relevant provisions in which the disputed term appears.[5] *See Lewis v. Howard L. Allen Invs., Inc.*, 956 N.W.2d 489, 491–92 (Iowa 2021) (resorting to context-specific analysis when "landlord" was statutorily defined as "*the* owner, lessor, *or* sublessor" and it was unclear whether both an owner and lessor could be a landlord at same time); *Rivera*, 830 N.W.2d at 730 (finding "the context of the savings clause does not require the term 'claim' to take on a meaning different from the statutory definition" because there was no ambiguity after applying its intended meaning). Peterbilt argues this case falls into the second category. In its view, the meaning of "community" *becomes* ambiguous when paired with the article "that" in section 322A.16. Because the legislature defined "community" but not "that community,"

---

[4] Justice Mansfield used the term "escape hatch" to describe an identical phrase introducing definitions in Iowa Code section 68A.102. *Iowa Right to Life Comm., Inc. v. Tooker*, 808 N.W.2d 417, 429 (Iowa 2011). There, the supreme court held a corporation was not a "political committee" in part because section 68A.404 exempted "independent expenditures" from that definition. *Id.* That specific exemption marked a restrained reading of the proviso "unless the context otherwise requires" consistent with the "escape hatch" moniker. Literally, an escape hatch is "an emergency exit from an enclosed space." *Escape Hatch*, Merriam-Webster, https://www.merriam-webster.com/dictionary/escape%20hatch (last visited May 25, 2021). Figuratively, an escape hatch is "a means of evading a difficulty, dilemma, or responsibility." *Id.* But that figurative evasion of a set definition does not reflect what the agency or district court did here. For its part, the district court engaged in a provision-by-provision analysis to decide whether the surrounding text dictated a distinct definition of community. And different still, the agency looked to the particular facts in deciding the context required a narrower definition of community.

[5] A third possible category, not relevant here, is when two statutory definitions conflict with one another and it is unclear which definition controls. *See Iowa Right to Life Comm., Inc.*, 808 N.W.2d at 427–28.

Peterbilt insists a contextual ambiguity exists, excusing its rejection of the statutory definition. We disagree.

As discussed, the legislature defined "community" as "the franchisee's area of responsibility as stipulated in the franchise." Iowa Code § 322A.1(2). We see no ambiguity in that definition. Nor does Peterbilt offer a solid reason why the context of section 322A.16 would call for a different definition. *See Rivera*, 830 N.W.2d at 731. Instead, Peterbilt complains that if the statutory definition holds, the good-cause factors would do "nothing more than reward dealer groups for having numerous locations, even if, like SCTS here, they spend nothing in the community [subject to the dual assignment.]" Caught up in its complaint, Peterbilt urges we must consider "the logical consequences" and "the context of this case." But that fact-driven approach would render the definitional section meaningless. *See Sherwin-Williams Co.*, 789 N.W.2d at 425 (noting that when the legislature defines a term, "the common law and dictionary definitions which may not coincide with the legislative definition must yield to the language of the legislature" (quoting *Hornby v. State*, 559 N.W.2d 23, 25 (Iowa 1997))).

What's more, the case-by-case scenario Peterbilt desires is implicit in the statutory definition. Peterbilt overlooks the fact that it has the bargaining power to set the boundaries of the franchisee's area of responsibility when negotiating its franchise agreements. At trial, SCTS criticized Peterbilt for seeking to alter the statute's meaning based on the economic circumstances of its truck dealers covering much larger territories than car dealers. We agree that Peterbilt cannot now complain that the definition as applied to these facts is too broad because it encountered unexpected business risks.

Without supportive authority, Peterbilt contends "the only plausible interpretation is that ['that community'] is referring to the proposed community of the proposed franchisee." But that contention clashes with another definition. The legislature defined "franchisee" as "a person who receives motor vehicles from the franchiser under a franchise and who offers and sells such motor vehicles to the general public." Iowa Code § 322A.1(6). By that definition, a *proposed* dealer like Allstate that had not yet entered into a franchise with Peterbilt is not a franchisee under this chapter.[6] Thus, the phrase "that community" refers to SCTS's area of responsibility as stipulated in the franchise.

Even when we read "that" as modifying "community" in section 322A.16, we see no reason to abandon the definition in section 322A.1(2). The district court was correct in reading section 322A.4 on additional franchises together with section 322A.16 on good cause. As the later provision, section 322A.16's references to "that community" are references back to section 322A.4.[7] But contrary to the district court's analysis, section 322A.4 requires a franchiser to establish good cause for an additional dealership in "any community in which the

---

[6] Allstate asserted at oral argument that it has been operating as an authorized Peterbilt dealer in Iowa since the DOT issued its decision in August 2019. That assertion makes no difference in our analysis. Because we are reviewing the validity of the agency decision based on a question of law, any steps taken after those proceedings are irrelevant.

[7] "That" is often used to emphasize a term mentioned before. *That*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/that (last visited May 25, 2021); *That*, Dictionary.com, https://www.dictionary.com/browse/that (last visited May 25, 2021).

same line is then represented." Here, that community was SCTS's area of responsibility as stipulated in its franchise with Peterbilt.[8]  *See id.* § 322A.1(2).

We find nothing in the statutory language showing the legislature intended "that community" to mean some undefined portion of the existing franchisee's area of responsibility.  Nor does the language allow a franchiser to define "that community" through its application to the DOT.  As SCTS argues, a franchiser could "gerrymander" those boundaries such that "[t]he magnitude and result of each individual statutory factor could be starkly different depending on where [the franchiser] chooses to locate the borders."  We agree the legislature could not have intended that result.  *See State v. Miller*, 622 N.W.2d 782, 785 (Iowa Ct. App. 2000) ("We may not—under the guise of statutory construction—enlarge or otherwise change the terms of a statute as the legislature adopted it.").

Peterbilt worries that allowing proof of SCTS's investments and consumer care in locations outside the Clear Lake area might prevent the dual assignment.  But our interpretation of section 322A.16 cannot hinge on the practical realities of these transactions.  Nor can we adopt a new definition because it makes sense under the specific facts of this case.  *See State v. Doe*, 903 N.W.2d 347, 353 (Iowa 2017) ("While the State's position makes some sense given the facts we have here, any interpretation of the word 'case' must apply across the board.").

---

[8] Peterbilt acknowledges the goal of section 322A.4 "is to ensure that an existing dealer can protest any establishment proposed in its assigned area of responsibility."

The legislature's definition of "community" leaves no ambiguity. As used in section 322A.16, "community" means the entire area of responsibility stipulated in the franchise between SCTS and Peterbilt. To that end, we conclude both the agency and the district court employed a faulty definition of community when deciding that Peterbilt met its burden of proving good cause for an additional dealership franchise.

## B. Remedy

But our decision that the agency and the district court used an incorrect definition does not clinch a victory for SCTS. A fact finder must still decide whether Peterbilt can meet its burden to show good cause for adding a franchisee when the relevant community is the area of responsibility stipulated in the franchise with SCTS. On this point, SCTS asks us to remand to the agency for a new determination using the proper definition of "community." Peterbilt counters that SCTS should have challenged "the mountain of evidence relied upon by the ALJ, the Department, and the district court" under each statutory factor on appeal.

After reviewing the record, we opt to defer to the DOT's expertise in this field to reconsider the evidence based on SCTS's area of responsibility as defined in its franchise. That approach hews to the "fundamental principle" that "administrative decisions are to be made by the agencies, and not by the courts." *Midwest Auto*, 646 N.W.2d at 422. Thus, we reverse the judicial review decision and remand to the DOT for further proceedings consistent with this opinion.

**REVERSED AND REMANDED TO THE AGENCY.**