# IN THE SUPREME COURT OF IOWA

No. 22–0759

Submitted December 14, 2023—Filed February 9, 2024

**ALEXANDRIA M. ANDERSON,** Individually and as Administrator of the **ESTATE OF CARTER JAY WILLIAM ANDERSON,** and **TERRY ANDERSON,** Individually,

Appellants,

vs.

**STATE OF IOWA,**

Appellee.

---

Appeal from the Iowa District Court for Linn County, Ian K. Thornhill, Judge.

A deceased child's estate, the child's mother, and the child's father appeal the dismissal of tort claims against the State of Iowa. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

May, J., delivered the opinion of the court, in which all justices joined.

Andrew Mahoney (argued) and Edward J. Prill of Crowley & Prill, Burlington, for appellants.

Brenna Bird, Attorney General; Samuel P. Langholz (until withdrawal) and Job Mukkada (argued), Assistant Attorneys General; and Pope S. Yamada of Phelan Tucker Law LLP, Iowa City, for appellee.

**MAY, Justice.**

A ten-year-old child was treated at the University of Iowa Hospitals and Clinics (UIHC). The next day, the child died. The child's mother filed administrative tort claims on behalf of the child's estate. Twenty-one days later, the child's mother was appointed as administrator of the estate. The State acknowledged the administrative tort claims but did not pursue settlement. This suit followed. The petition named three plaintiffs: (1) the mother "as Administrator of the Estate of" the deceased child, (2) the mother on behalf of herself individually, and (3) the child's father on behalf of himself individually. The State moved to dismiss. As support for its motion, the State argued that none of the plaintiffs had presented proper administrative tort claims. As a result, the State argued, none of the plaintiffs exhausted administrative remedies as required by the Iowa Tort Claims Act (ITCA). The district court agreed and dismissed the suit. The plaintiffs moved for reconsideration, but the district court refused. This appeal followed.

To resolve this appeal, we must answer three questions:

1. Was the district court correct to dismiss the parents' individual claims because no *individual* administrative tort claims were filed?

2. Was the district court correct to dismiss the estate's claims because the mother was not appointed as administrator until twenty-one days after she filed administrative tort claims on behalf of the estate?

3. Did the district court abuse its discretion by declining to permit new evidence to be filed with the plaintiffs' motion to reconsider?

For the reasons explained below, we conclude as follows:

1. The district court was correct to dismiss the parents' individual claims.

2. The district court erred by dismissing the estate's claims.

3. The district court did not abuse its discretion by refusing to permit the plaintiffs' new evidence.

Accordingly, we affirm in part, we reverse in part, and we remand for further proceedings.

## I. Factual and Procedural Background.

Carter Anderson was born in 2008. Terry and Alexandria Anderson are Carter's parents.

On May 31, 2018, Carter was admitted to UIHC because his feeding tube had become dislodged. UIHC employees repositioned Carter's feeding tube.

On June 1, Carter was found unresponsive. Carter was taken by ambulance to another hospital. Carter died there. The plaintiffs allege that Carter's death was caused by the improper placement of his feeding tube on May 31 at UIHC.

Almost two years later, on May 8, 2020, the State Appeal Board received five completed claim forms. One claim was against the State, while the other four were against individual employees of UIHC. Each claim suggested that negligence by the State and its employees had caused Carter's death. Each claim identified the claimant as "Alexandria Anderson as Administrator of the Estate of Carter Anderson, deceased." The claim forms also identified attorneys retained to pursue the claims.

When the claim forms were filed, Alexandria had not yet been named as the administrator of Carter's estate. It was twenty-one days later, on May 29, that the court issued letters for her appointment.

Meanwhile, the State Appeal Board acknowledged the claim forms in a letter dated May 15, 2020. The May 15 letter was sent to one of the attorneys identified on the claim forms.

The State took no further action on the claims. So, on November 24, counsel sent a letter to the State Appeal Board. The letter was entitled, "WITHDRAWAL OF CLAIM PURSUANT TO IOWA CODE SECTION 669.5." The letter noted that "[o]n May 6 [sic], 2020, claimant, Alexandria Anderson as Administrator of the Estate of Carter Anderson, deceased, filed her written notice of claim form with the State Appeal Board." The letter also noted that although "more than 6 months" had passed "since the claimant submitted her claim," neither "the claimant" nor "her attorney" had received notice of any disposition of "this claim." So, the letter explained, "the claimant is hereby placing" the State "on formal notice that she is hereby withdrawing the State Tort Claim from consideration." The letter went on to explain that "[t]he claimant will proceed with a civil lawsuit pursuant to the Iowa State Tort Claims Act."

On December 18, the State sent a letter to counsel. The letter acknowledged receipt of counsel's November 24 letter. And the letter withdrew the claims from further consideration.

On January 28, 2021, the plaintiffs commenced the present lawsuit by filing a petition in district court. Their petition identified three plaintiffs: (1) Alexandria M. Anderson as the "Administrator of the Estate of Carter Jay William Anderson"; (2) Alexandria M. Anderson, individually; and (3) Terry Anderson, individually. All plaintiffs alleged professional negligence by the defendants. But the plaintiffs did not all seek the same elements of damage. The estate sought wrongful death damages, including burial expenses, the loss of Carter's future accumulation of wealth, and Carter's pain and suffering. Alexandria and Terry as individuals made claims for loss of consortium. There was no overlap between the damages sought by the estate and the damages sought by the individuals. The estate did not seek consortium damages, and the individuals only sought consortium damages.

Soon after, the attorney general certified that all of the individual defendants were acting within the scope of their employment for the State of Iowa at all times relevant to the plaintiffs' claims. Because of this certification, the plaintiffs were obligated to dismiss the individual defendants and pursue the State instead. *See* Iowa Code § 669.5(2)(*a*) (2020). Consistent with this obligation, the plaintiffs filed an amended petition that named only the State as a defendant. Otherwise, the amended petition was substantially identical to the plaintiffs' prior petition.

The State then answered the amended petition. With its answer, the State raised affirmative defenses, including "failure to exhaust administrative remedies."

Following discovery, the State moved to dismiss. The State argued that the district court lacked subject matter jurisdiction because the plaintiffs failed to exhaust administrative remedies. This was true, the State argued, for two reasons. First, the individual plaintiffs—Alexandria and Terry—failed to exhaust remedies because they did not file their own separate tort claims for consortium with the State Appeal Board. Second, the estate failed to exhaust remedies because Alexandria "did not have authority to file a tort claim on behalf of the" estate "when the tort claims were filed on behalf the Estate."

The district court granted the State's motion. The plaintiffs then asked the court to reconsider. At the same time, the plaintiffs also asked the district court to permit the filing of certain medical records as an exhibit under seal. The district court denied both requests. The plaintiffs now appeal.

**II. Merits.**

As noted, this appeal raised three questions: (1) Did the district court err by dismissing the individual claims for failure to comply with the ITCA's exhaustion requirement? (2) Did the district court err by dismissing the estate's

claim for failure to comply with the ITCA's exhaustion requirement? and (3) Did the district court abuse its discretion by declining to permit an exhibit to be filed under seal? We address each of these questions below. Because the first two questions both concern the ITCA's exhaustion requirement, we address those questions together. We start with a general discussion of the ITCA and its exhaustion requirement.

**A. ITCA's Exhaustion Requirement.** To understand the ITCA, it helps to first consider how the law worked before the ITCA's passage. During the many decades that preceded the ITCA, the State enjoyed "complete immunity" from tort suits. *Wagner v. State*, 952 N.W.2d 843, 856 (Iowa 2020) (quoting *Speed v. Beurle*, 251 N.W.2d 217, 219 (Iowa 1977)); *see, e.g.*, *Nixon v. State*, 704 N.W.2d 643, 645 (Iowa 2005) ("At the time the State first injured the plaintiffs in 1939, it was immune from suit under the common-law doctrine of sovereign immunity."). Back then, "the maxim that 'the King can do no wrong' prevailed in Iowa"—"[n]o tort action could be maintained against the State or its agencies." *Wagner*, 952 N.W.2d at 856 (quoting Don R. Bennett, *Handling Tort Claims and Suits Against the State of Iowa: Part I*, 17 Drake L. Rev. 189, 189 (1968)); *see Montandon v. Hargrave Constr. Co.*, 130 N.W.2d 659, 660 (Iowa 1964) ("The doctrine of governmental immunity has come to us from the common law. For nearly 100 years it has been the law of our state."); *cf. Boyer v. Iowa High Sch. Athletic Ass'n*, 127 N.W.2d 606, 612 (Iowa 1964) (noting in April 1964 that although "[t]he state senate in the last regular legislative session passed a state torts claim act," the act "was not passed by the house and, of course, did not become law").

This changed in 1965, when the ITCA was enacted. *Wagner*, 952 N.W.2d at 856. Through the ITCA, the legislature partially waived the State's immunity from tort suits. Iowa Code § 669.4 ("The immunity of the state from suit and

liability is waived *to the extent provided in this chapter*." (emphasis added)). But the *partial* nature of this waiver deserves emphasis. *See, e.g., Hubbard v. State*, 163 N.W.2d 904, 912 (Iowa 1969) ("Under the Act, the State is liable as [an] individual only in the manner and to the extent to which it has consented."). Even after the ITCA's enactment, the State's immunity from tort suits "remains the rule rather than the exception." *Wagner*, 952 N.W.2d at 856 (quoting *Lloyd v. State*, 251 N.W.2d 551, 555 (Iowa 1977)). Although the State is no longer wholly immune from tort suits, the State may be sued "only in the manner and to the extent to which consent has been given by the legislature." *Swanger v. State*, 445 N.W.2d 344, 346 (Iowa 1989); *see also Segura v. State*, 889 N.W.2d 215, 221 (Iowa 2017) ("By enacting the ITCA, the State waived this immunity and opened itself to suit, but it did so strictly on its terms."); *Drahaus v. State*, 584 N.W.2d 270, 272 (Iowa 1998) ("Thus, a private citizen's right of suit under the Tort Claims Act is not absolute, but rather is limited by conditions set forth by the legislature in chapter 669."). "This reality warrants respect for the statutory parameters marked-out by the legislature in creating the act." *Trobaugh v. Sondag*, 668 N.W.2d 577, 580 (Iowa 2003).

"One of the most prominent" limitations on the State's tort liability is the ITCA's requirement that claimants must comply with an administrative claims process "before proceedings may be initiated in court against the state." *Rivera v. Woodward Res. Ctr.*, 830 N.W.2d 724, 727 (Iowa 2013). We describe this requirement "as an 'administrative remedy' that must be exhausted." *McFadden v. Dep't of Transp.*, 877 N.W.2d 119, 122 (Iowa 2016) (quoting *Schneider v. State*, 789 N.W.2d 138, 145 (Iowa 2010)). Exhaustion of the administrative claims process is "a condition precedent to the right to resort to the courts." *Charles Gabus Ford, Inc. v. Iowa State Highway Comm'n*, 224 N.W.2d 639, 648 (Iowa 1974). Indeed, "[e]xhaustion of the administrative process is jurisdictional, and

a suit commenced without complying with this process is subject to dismissal." *Swanger*, 445 N.W.2d at 347; *see Feltes v. State*, 385 N.W.2d 544, 548 (Iowa 1986) (en banc) ("A waiver of sovereign immunity is strictly construed, and consequently, the administrative claims procedure must be followed in order to invoke the court's jurisdiction.").

The first step in the administrative claims process is presentment of a claim. *See In re Est. of Voss*, 553 N.W.2d 878, 880 (Iowa 1996). "Improper presentment of a claim, or not presenting one at all, has been considered a failure to exhaust one's administrative remedies, depriving the district court of subject matter jurisdiction." *Id.* (collecting cases); *see Swanger*, 445 N.W.2d at 347 ("[T]he doctrine of exhaustion may be invoked where tort claimants have not properly submitted their claims to the board for consideration and disposition.").

Iowa Code section 669.3(2) states: "A claim made under this chapter shall be filed with the director of the department of management . . . ." *See also Rivera*, 830 N.W.2d at 727 (citing section 669.3(2) for the proposition that the ITCA's administrative "scheme requires the claimant to first file a claim with the director of the department of management"). The director of the department of management, then, brings the matter before the State Appeal Board, which is comprised of the director of the department of management, the state auditor, and the state treasurer. *McFadden*, 877 N.W.2d at 121 & n.2 (citing Iowa Code § 669.3(2); *id.* § 73A.1). And section 669.3(3) requires the State Appeal Board to "adopt rules and procedures for the handling, processing, and investigation of claims, in accordance with chapter 17A." Iowa Code § 669.3(3). "Pursuant to its rule-making authority, the state appeal board has prescribed the form and content of tort claims." *Swanger*, 445 N.W.2d at 350. When a claim meets those form and content requirements, it is properly presented. *See, e.g., Rivera*, 830 N.W.2d at 727–28. In *McFadden v. Department of Transportation*, for

example, we found that a claimant "properly presented her claim" because her claim provided all of the information required by the State Appeal Board's rules and prescribed claim form. 877 N.W.2d at 123; *accord Schneider*, 789 N.W.2d at 145 (holding that over a dozen plaintiffs exhausted their administrative remedies where "[e]ach of" them "filed an administrative claim on a form promulgated by the [state] appeal board"); *Swanger*, 445 N.W.2d at 350–51 (concluding that tort claims are "made" when forms prescribed by the State Appeal Board "are properly filed with the director of [the department of] management").

Once a claim is presented, the attorney general has six months in which to review the claim and make a final disposition. *Rivera*, 830 N.W.2d at 728; *accord* Iowa Code § 669.5(1). The claimant is not permitted to file a lawsuit during that six-month period. *See Rivera*, 830 N.W.2d at 728. But "[i]f the attorney general has not made a final determination within six months, the claimant may withdraw the claim and proceed to bring a lawsuit in district court without a final disposition." *Id.*

**B. The ITCA and the Individual Claims of Terry and Alexandria.**

1. *Analysis.* With this background in mind, we now consider whether the district court erred in concluding that the individual plaintiffs—Alexandria and Terry—failed to exhaust remedies because they did not present individual tort claims and, therefore, did not satisfy the ITCA's presentment requirement. After analysis, we agree with the district court that Terry and Alexandria did not present valid individual claims. Indeed, as will be explained, Terry and Alexandria did not attempt to present individual claims.

As mentioned above, the ITCA directs the State Appeal Board to adopt rules to govern the presentation process. *McFadden*, 877 N.W.2d at 123 (quoting Iowa Code § 669.3(3)). The rules governing the form and content of tort claims appear in Iowa Administrative Code rules 543—1.3 through 1.5. Iowa Admin.

Code rs. 543—1.3 to .5. For instance, rule 1.3 requires claims to state "the name, address, telephone number, and age of the person making the claim." *McFadden*, 877 N.W.2d at 123 (quoting Iowa Admin. Code r. 543—1.3(3)). And rule 1.4. requires "[a] separate claim" to be filed "by each claimant." Iowa Admin. Code r. 543—1.4 ("A claim shall state whether it is against an employee or the state. . . . A separate claim shall be filed for each type by each claimant."). These requirements are plainly stated on the State Appeal Board claim forms that the plaintiffs used to submit claims.

Following our review, we conclude that these requirements were not met with regard to Terry and Alexandria as individuals. As explained, five claim forms were filed. Each claim was filed against a different defendant. But each claim was filed by the same claimant: "Alexandria Anderson as Administrator of the Estate of Carter Anderson, deceased." No separate claims were filed by Alexandria Anderson as an individual. No separate claims were filed by Terry Anderson as an individual.

Because Terry and Alexandria did not submit separate individual claims, the presentment requirement was not met as to their individual claims. *McFadden*, 877 N.W.2d at 123; *Schneider*, 789 N.W.2d at 145; *Swanger*, 445 N.W.2d at 350–51. Because the presentment requirement was not met, administrative remedies were not exhausted. Because administrative remedies were not exhausted, the district court was right to dismiss the individual claims.

2. *Counterarguments concerning the individual claims.* We have considered all of the plaintiffs' counterarguments. Three of them deserve additional discussion, namely: (a) the plaintiffs' reliance on *Segura v. State*, 889 N.W.2d 215, and *Schneider v. State*, 789 N.W.2d 138; (b) the plaintiffs' reliance on the attorney general's duty to investigate; and (c) the plaintiffs' suggestion that Alexandria and Terry were excused from making individual claims.

a. Segura *and* Schneider. We begin by noting the plaintiffs' reliance on *Segura* and *Schneider*. As the plaintiffs point out, in both *Segura* and *Schneider*, we found that the presentment requirement was met even though the plaintiffs had not complied with all of the State Appeal Board's rules. *Segura*, 889 N.W.2d at 227; *Schneider*, 789 N.W.2d at 146. And *Segura* said that the presentment requirement is met so long as "the [state appeal] board receives a writing that 'disclose[s] the amount of' damages claimed and 'generally describe[s] the legal theories asserted against the State.' " 889 N.W.2d at 227 (second and third alterations in original) (quoting *Schneider*, 789 N.W.2d at 144). Based on *Segura* and *Schneider*, the plaintiffs argue that Terry and Alexandria's failure to comply with the State Appeal Board's rules does not mean that they failed to meet the presentment requirement. Rather, the plaintiffs contend, because the claim forms submitted by Alexandria as administrator of Carter's estate included the estate's claim for $15,000,000 in damages and a general description of the estate's general theories, we must conclude that Alexandria and Terry properly submitted individual claims.

We disagree. The facts in *Segura* and *Schneider* are not like the facts here. *See Segura*, 889 N.W.2d at 227; *Schneider*, 789 N.W.2d at 145–46. Although the plaintiffs in *Segura* failed to comply with a rule that required them to personally sign their claims (their attorney signed for them), each of the *Segura* plaintiffs filed a separate claim form that identified them as the individual people—Paula and Ricardo Segura—who were making claims. 889 N.W.2d at 218 & n.1. Indeed, the Seguras' separate claim forms included "personal information, including the Seguras' . . . contact information and social security numbers." *Id.* at 218. Likewise, although some of the *Schneider* plaintiffs failed to provide follow-up information requested by the appeals board, "[e]ach of" the *Schneider* plaintiffs had "filed an administrative claim on a form promulgated by the [state] appeal

board." 789 N.W.2d at 145. In short, neither *Schneider* nor *Segura* dealt with plaintiffs like Terry and Alexandria, who failed to file separate claims that identified them as individual claimants. *See Segura*, 889 N.W.2d at 227; *Schneider*, 789 N.W.2d at 145–46. So we do not believe *Schneider* or *Segura* should govern the outcome here.

Moreover, we agree with the State that *even if* we were to apply the test described in *Segura*, the presentment requirement was not met as to Alexandria and Terry individually. *See Segura*, 889 N.W.2d at 227. Again, upon a fair reading, the claims filed are not claims on behalf of Alexandria or Terry as individual claimants. Rather, the claim forms made it clear that an estate—not individual parents—was presenting claims. So a fair reading of the claim forms would not reveal what amount of damages was being claimed by any individuals. *See id.* And a fair reading of the claim forms would not reveal what legal theories were being asserted by any individuals. *See id.* Although the claim forms mention a loss of consortium, the claim forms do not state that individuals are making claims for loss of consortium or what amounts they seek. Rather, the claim forms say that it is "The Claimant"—*the estate*—who is alleging a loss of consortium in some unspecified amount. As the plaintiffs said in their resistance to the State's motion to dismiss, "Alexandria Anderson as the administrator of the estate for her deceased son did mention that *the estate* would be seeking loss of consortium damages in the tort claim forms provided to the [State Appeal] Board." (Emphasis added.) The estate—not any individuals.

We acknowledge the plaintiffs' point that, in a narrative section, the claim forms mention that "the Decedent, Carter Anderson, was taken by his mother and claimant, Alexandria Anderson, to the ER at UIHC in Iowa City." All the same, when the claim forms are viewed as a whole, there is still no question about who the real claimant is. When read as a whole, the forms make it plain

that the claimant is Alexandria *on behalf of the estate*, not Alexandria or Terry as individuals.

This reading is confirmed by the plaintiffs' own filings. In the district court, the plaintiffs said that *it would have been improper* for Alexandria or Terry to have made claims as individuals. In their resistance to the motion to dismiss, the plaintiffs claimed that—under Iowa law—"Alexandria Anderson *as administrator* was the *only* person that could be a proper 'Claimant' when submitting tort claims to the [State Appeal] Board." (Emphasis added.) The plaintiffs further claimed that "Alexandria and Terry Anderson *did not and could not* properly and consistently submit individual claims to the [State Appeal] Board." (Emphasis added.) These comments show that the plaintiffs made a conscious decision to make claims *only* on behalf of the estate *and not* on behalf of any individual.

b. *The attorney general.* We next consider the plaintiffs' argument that the attorney general should have investigated more. As the plaintiffs note, the ITCA imposes a duty of investigation on the attorney general. Iowa Code § 669.19. And the attorney general apparently did not investigate the claims filed. Because the claims were not investigated, the plaintiffs argue, the State has waived objections over "a mere technicality" in this suit. By this, it seems, the plaintiffs mean that the State has waived the ability to raise exhaustion of remedies.

We disagree. Like the State, we think the ITCA anticipates that the attorney general won't take action on all claims. If the attorney general hasn't resolved a claim in six months, then the claimant may go forward with a lawsuit, as occurred here. *Id.* § 669.5(1).

In any event, no authority suggests that the attorney general's failure to investigate relieves claimants of the duty to exhaust remedies, including the

fundamental duty to present a claim. Nor does it change our conclusion that Alexandria and Terry did not present claims in their individual capacities.

c. *Need for individual claims.* Finally, we consider the plaintiffs' fallback position that—even assuming Alexandria and Terry failed to file individual claims—those failures do not matter because *the estate* can recover consortium damages. We disagree. Our law is clear that parents are *the only* proper plaintiffs to recover *for their loss of consortium* arising from the death of a *minor* child. *Roth v. Evangelical Lutheran Good Samaritan Soc'y*, 886 N.W.2d 601, 605 (Iowa 2016); *see also* Iowa R. Civ. P. 1.206 ("A parent, or the parents, may sue for the expense and actual loss of services, companionship and society resulting from injury to or death of a minor child."); *Weitl v. Moes*, 311 N.W.2d 259, 264–65 (Iowa 1981) (en banc) (describing the history behind consortium claims), *overruled on other grounds by Audubon–Exira Ready Mix, Inc. v. Ill. Cent. Gulf R.R.*, 335 N.W.2d 148 (Iowa 1983) (en banc). That is undoubtedly why the parents—Alexandria and Terry—are named as individual plaintiffs in the petition filed in district court. But no plaintiff may sue unless that plaintiff has exhausted administrative remedies. Because Terry and Alexandria did not do so, they may not sue now.

3. *Conclusion regarding individual claims.* As we said in *Bloomquist v. Wapello County*, because "consortium claims are separate claims under Iowa law it is incumbent on the claimant to first file a claim before the proper administrative agency, even if as a practical matter it would not have changed the State's approach to the case." 500 N.W.2d 1, 8 (Iowa 1993). Because Alexandria and Terry did not make separate claims for consortium at the administrative level, the district court lacked jurisdiction over their consortium claims. *Id.*; *see Est. of Miller v. United States*, 157 F. Supp. 2d 1071, 1075 (S.D. Iowa 2001) (dismissing a claim for loss of parental consortium where no separate

tort claim was submitted on behalf of the parent). The district court was correct to dismiss the individual claims.

### C. The ITCA and the Estate's Claims.

1. *Analysis.* We next consider whether the district court was correct to dismiss the claim of Alexandria as the administrator for Carter's estate. As to this ruling, we conclude the district court erred.

We start with a brief factual recap. Carter was admitted to UIHC on May 31, 2018, and he died the next day, June 1. On May 8, 2020, Alexandria filed claim forms in her capacity as administrator of Carter's estate. But when the claim forms were filed, Alexandria had not yet received letters of appointment. Those letters of appointment were issued twenty-one days later, on May 29. Several months passed. Then, on November 24, Alexandria's counsel sent a letter to the State Appeal Board. The letter noted that "[o]n May 6 [sic], 2020, claimant, Alexandria Anderson as Administrator of the Estate of Carter Anderson, deceased, filed her written notice of claim form with the State Appeal Board." The letter further noted that although "more than 6 months" had passed "since the claimant submitted her claim," neither "the claimant" nor "her attorney" had received notice of any disposition of "this claim." So, the letter explained, "the claimant is hereby placing" the State "on formal notice that she is hereby withdrawing the State Tort Claim from consideration." The letter went on to explain that "[t]he claimant will proceed with a civil lawsuit pursuant to the Iowa State Tort Claims Act." True to her word, Alexandria promptly filed the present action.

After discovery, the State moved to dismiss the action. As to Alexandria's claim on behalf of the estate, the State argued that administrative remedies were never exhausted because the estate never filed an "effective tort claim." The claims filed were not "effective," the State argued, because Alexandria was not

appointed administrator "during the time she pursued the state tort claims," and therefore, "she had no capacity to make the claims on behalf of the Estate." The district court agreed and granted the State's motion.

We conclude that the motion should have been denied. It is true that, under the ITCA, a claim is not valid unless the State could be "liable to the claimant" in a subsequent suit. Iowa Code § 669.2(3)(*a*); *accord Voss*, 553 N.W.2d at 880. So the question here is whether an estate's claims could be viable in a subsequent suit against the State even if the decedent's mother filed the claims before being appointed administrator. The answer depends on principles of estate law. And the law of estates recognizes that, when a person dies, a representative may act to protect the estate's interests even before the representative is appointed. *See* 34 C.J.S. *Executors and Administrators* § 219, at 90–91 (2023). Then, once the appointment occurs, the representative may ratify pre-appointment acts. *Id.* § 219, at 91. Those ratified acts are "granted the same effect as" acts that occur "after appointment." *Id.* § 219, at 90; *see Gardner v. Beck*, 189 N.W. 962, 966 (Iowa 1922) (stating actions of the estate's pretended representative "prior to his appointment and qualification as such" are "not binding upon the estate, though they may become so by later ratification when deemed in the interest of the estate").

It follows that, generally speaking, the State *can* be liable to an estate even though the administrator filed tort claims before being appointed. But there is at least one important limitation to this principle: Suits filed prior to the administrator's appointment do not toll the statute of limitations. *Gardner*, 189 N.W. at 966. So if an administrator is not appointed before the expiration of the statute of limitations, the suit will be time-barred. *Id.*; *see also Est. of Dyer v. Krug*, 533 N.W.2d 221, 224 (Iowa 1995); *Pearson v. Anthony*, 254 N.W. 10, 12–13 (Iowa 1934).

Applying these principles here, we believe that the estate's tort claims are valid. Although Alexandria filed the tort claims before she was appointed, the court did later appoint her. Alexandria then ratified the tort claims by continuing to pursue them before the State Appeal Board and, later, by pursuing this suit. Moreover, because Alexandria was appointed on May 29, 2020, her appointment fell within the statute of limitations for claims arising from Carter's death on June 1, 2018. *See* Iowa Code § 669.13 (establishing the statute of limitations for claims under the ITCA, requiring tort claims to be filed administratively "within two years after the claim accrued"). And so, unlike in cases like *Gardner v. Beck* and *Pearson v. Anthony*, the statute of limitations does not bar the estate's claims. *See Gardner*, 189 N.W. at 966; *Pearson*, 254 N.W. at 12–13. Nor do we see other reasons to treat the estate's claims as invalid.

2. *In re Estate of Voss.* We recognize that the district court believed that our opinion in *In re Estate of Voss* required dismissal of the estate's claims. *See* 553 N.W.2d at 882. After respectful consideration, we think *Voss* should be distinguished.

*Voss* arose from the death of an adult man named Bryan Voss in February 1993. *Id.* at 879. About four months after Bryan's death, his mother filed a tort claim solely "in her individual capacity" for her son's wrongful death. *Id.* But Iowa law did not allow her any right of recovery for the death of her adult son. *Id.* at 881. As the *Voss* court explained, the mother "had no claim as the parent of the decedent because Iowa has not recognized a loss of consortium claim by a parent for the death of an adult child." *Id.* at 881 n.3. And so Bryan's mother had no capacity to sue in an individual capacity. *See id.* at 881 & n.3. The State Appeal Board denied the mother's claim. *Id.* at 879.

Nearly two years later, in January 1995, the mother was appointed the administrator of her son's estate. *Id.* She then filed a lawsuit "in her

representative capacity." *Id.* The State moved to dismiss based on the failure to exhaust administrative remedies. *Id.* The district court granted the motion, and we affirmed. *Id.* at 879–80. Here is an excerpt from our opinion:

> Because we are persuaded [the mother], *in her individual capacity,* had no authority to make an administrative claim for her son's wrongful death, no valid claim was submitted to the [State Appeal] Board. Consequently, we conclude [the mother], *as the administrator of the estate,* failed to exhaust her administrative remedies.

*Id.* at 879.

The case before us is not like *Voss*. Unlike the mother in *Voss*, Alexandria made no claim in her individual capacity. *See id.* Rather, from the outset, Alexandria's claim was made solely as the administrator of the estate. And, of course, the estate is a proper plaintiff under Iowa law. Moreover, although Alexandria had not yet been appointed as administrator when she made those claims on the estate's behalf, she was appointed a mere twenty-one days later. And she continued to pursue those claims after she was appointed as administrator. We believe this was sufficient to ratify the claims and, therefore, to give those claims the same effect as if they had been made after she was appointed. *See* 34 C.J.S. *Executors and Administrators* § 219, at 20–21 (2023).

3. *Conclusion.* The district court erred in concluding that the estate's claims should be dismissed.

**D. Exhibit Under Seal.** Finally, the plaintiffs also contend that the district court abused its discretion by declining to permit them to file certain medical records under seal. We disagree.

We start with some additional background facts. After the State filed its motion to dismiss, the plaintiffs filed their resistance. In their resistance, the plaintiffs described the information that was provided to the State Appeal Board

through the filing of the claim forms. As one particular matter, the plaintiffs noted that, with the claim forms, Alexandria:

> provided exhibits to the [State Appeal] Board in the form of autopsy reports and medical records to support the theory of medical negligence and damages being sought. Of note, the UIHC medical records provided to the [State Appeal] Board mention the fact that Carter had two parents. As an aside, Plaintiffs' counsel has not attached these medical records herein due to confidentiality concerns, however, if the Court would like to see view [sic] these medical records Plaintiffs' counsel will file it under seal.

It appears that the court did not take the plaintiffs up on their offer. In any event, our review of the record shows that the medical records were not filed.

Ultimately, the district court granted the motion to dismiss. The plaintiffs responded by filing a motion to reconsider. The plaintiffs again noted that, with her tort claims, Alexandria had submitted medical records that mentioned Carter's parents. More particularly, the motion said that "clear information in the medical records, which will be provided to the Court as Exhibit B upon the Court's order allowing said records to be sealed, show[ed] that Carter Anderson had two surviving, married parents."

Together with their motion to reconsider, the plaintiffs also filed a "motion to seal record exhibits." The motion alleged that "Exhibit B, consisting of certain medical records of the decedent," had been filed. The motion asked the court to enter an order sealing Exhibit B. The motion did not include any further description of the medical records other than to mention that they had been "submitted in support of the State Tort Claims" at issue here.

The State resisted. The State observed that "a motion to reconsider is not the proper avenue to submit new evidence." And, the State noted, "The medical records Plaintiffs now seek to submit to this Court for reconsideration of its ruling were never submitted to this Court as an exhibit during the parties'

original dispute regarding the Motion to Dismiss." So, the State contended, the court should deny the plaintiffs' request to submit the medical records. Alternatively, though, the State acknowledged that *if* the court should conclude that the medical records should be considered, then indeed "the records should be placed under seal."

The district court denied both the motion to reconsider and the motion to seal. As for the medical records, the court explained that the records would not be relevant to the court's determination because "the fact of whether or not Carter Anderson's two surviving parents were listed on the medical record is not relevant to the Court's holding." So, the court declined to "issue an order allowing said records to be sealed so that they may be presented to the Court."

Now, on appeal, the plaintiffs contend that the court abused its discretion by declining to permit the medical records to be filed under seal. We disagree. Like the district court, we think that—based on the plaintiffs' descriptions of the medical records—the actual filing of those records would not have changed the proper outcome in this case. Assuming, as the plaintiffs say, that the medical records showed that Alexandria and Terry were Carter's parents, that would not change the fact that Alexandria and Terry did not make individual claims.

We also agree with the State that if the plaintiffs believed the records were a necessary part of the record, then they should have requested leave to file the records before the court ruled on the motion to dismiss. It is generally improper for parties to submit new evidence at the motion-to-reconsider stage. *E.g., McKee v. Isle of Capri Casinos, Inc.*, 864 N.W.2d 518, 525–26 (Iowa 2015) ("Generally speaking, a party cannot use a rule 1.904(2) motion to introduce new evidence."); *In re Marriage of Bolick*, 539 N.W.2d 357, 361 (Iowa 1995) ("Motions under rule 179(b) are permitted so that courts may enlarge or modify findings based on evidence already in the record. They are not vehicles for parties to retry issues

based on new facts."); *accord St. John's Full Gospel Baptist Church v. Tax 207*, No. 11–0553, 2012 WL 1860667, at *5 (Iowa Ct. App. May 23, 2012) ("A motion to reconsider is not the proper avenue to submit new evidence for the court to consider.").

**III. Disposition.**

For the reasons explained, we affirm the dismissal of the individual claims, we affirm the district court's refusal to hear new evidence, we reverse the dismissal of the estate's claims, and we remand for further proceedings.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**